Filed 8/21/24; Opinion following rehearing

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GABRIELA CISNEROS, | F081373 |
| Plaintiff and Appellant, | (Super. Ct. No. BCV-19-100294) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES et al., | **OPINION** |
| Defendants and Respondents. | |
| [And 49 other cases.[*]] | |

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part VII.

[*]     *Granados v. Department of Motor Vehicles* (No. BCV-19-100295); *Reese v. Department of Motor Vehicles* (No. BCV-19-100296); *Alejandra v. Department of Motor Vehicles* (No. BCV 19-100297); *Frias v. Department of Motor Vehicles* (No. BCV-19-100298); *Orrin v. Department of Motor Vehicles* (No. BCV-19-100556); *Chavez v. Department of Motor Vehicles* (No. BCV-19-100557); *O'Neil v. Department of Motor Vehicles* (No. BCV-19-100558); *Berry v. Department of Motor Vehicles* (No. BCV-19-100563); *Cosper v. Department of Motor Vehicles* (No. BCV-19-100566); *Klein v. Department of Motor Vehicles* (No. BCV-19-100572); *Jimenez v. Department of Motor Vehicles* (No. BCV-19-100776); *Owen v. Department of Motor Vehicles* (No. BCV-19-100777); *Butler v. Department of Motor Vehicles* (No. BCV-19-100778); *Howard v. Department of Motor Vehicles* (No. BCV-19-100780); *Singh v. Department of Motor Vehicles* (No. BCV-19-100805); *Russell v. Department of Motor Vehicles* (No. BCV-19-100807); *Lynam v. Department of Motor Vehicles* (No. BCV-19-100808); *Blackhurst v. Department of Motor Vehicles* (No. BCV-19-100810); *Aguilar v. Department of Motor Vehicles* (No. BCV-19-100835); *Hawkins v. Department of Motor Vehicles* (No. BCV-19-100836); *Bennett v. Department of Motor Vehicles* (No. BCV-19-100837); *Ogden v. Department of Motor Vehicles* (No. BCV-19-100838); *Segovia-Rivera v. Department of Motor Vehicles* (No. BCV-19-100839); *Campbell v. Department of Motor Vehicles* (No. BCV-19-100840); *R. Gonzalez-Ozuna v. Department of Motor Vehicles* (No. BCV-19-100841); *Davis v. Department of Motor Vehicles* (No. BCV-19-100843); *Becarra v. Department of Motor Vehicles* (No. BCV-19-100878); *Almanza v. Department of Motor Vehicles* (No. BCV-19-100879); *Graf v. Department of Motor Vehicles* (No. BCV-19-100880); *J. Perales*

APPEAL from a judgment of the Superior Court of Kern County. Eric Bradshaw, Judge.

Middlebrook & Associates and Richard O. Middlebrook for Plaintiffs and Appellants.

Xavier Becerra and Rob Bonta, Attorneys General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian, Lauren Sible and Brad Parr, Deputy Attorneys General for Defendants and Appellants.

-ooOoo-

Appellants are drivers whose licenses were suspended by the Department of Motor Vehicles (DMV) after they were arrested for driving under the influence. Each driver invoked the right to challenge the suspension in an "administrative per se" (APS) hearing conducted by the DMV. Before the APS hearings, the drivers requested continuances based on their counsel's conflicting court appearances. The DMV denied the requests, went forward with the hearings, and issued administrative decisions reinstating the suspensions. The drivers challenged the DMV's denials of the continuances by filing petitions for writs of mandate in the superior court. The superior court denied their petitions. The drivers appealed.

*v. Department of Motor Vehicles* (No. BCV-19-100881); *Del Sesto v. Department of Motor Vehicles* (No. BCV-19-100885); *Montero v. Department of Motor Vehicles* (No. BCV-19-100886); *Sanders v. Department of Motor Vehicles* (No. BCV-19-100887); *Martinez v. Department of Motor Vehicles* (No. BCV-19-100907); *Miller v. Department of Motor Vehicles* (No. BCV-19-100908); *White v. Department of Motor Vehicles* (No. BCV-19-100909); *Hunt v. Department of Motor Vehicles* (No. BCV-19-100910); *Herrera v. Department of Motor Vehicles* (No. BCV-19-100913); *Perea v. Department of Motor Vehicles* (No. BCV-19-101077); *Carter v. Department of Motor Vehicles* (No. BCV-19-101078); *Diaz v. Department of Motor Vehicles* (No. BCV-19-101079); *Kim v. Department of Motor Vehicles* (No. BCV-19-101080); *Romero v. Department of Motor Vehicles* (No. BCV-19-101081); *Datiz v. Department of Motor Vehicles* (No. BCV-19-101126); *M. Rodriguez v. Department of Motor Vehicles* (No. BCV-19-101127); *D. Gonzalez v. Department of Motor Vehicles* (No. BCV-19-101134); *Mody v. Department of Motor Vehicles* (No. BCV-19-101135); *Blanche v. Department of Motor Vehicles* (No. BCV-19-101140); *Lopez Vega v. Department of Motor Vehicles* (No. BCV-19-101141).

The briefing in this appeal was divided into two stages at the request of the Attorney General. The first stage addressed whether the drivers' petitions for writ of mandate were timely—a question that might have been dispositive of several of the drivers' cases. The first stage ended in April 2022, when we adopted the statutory interpretation set forth in part II. of this opinion. We concluded the 10-day time limit in Government Code section 11524, subdivision (c)[1] for seeking judicial review of a continuance "denied by an administrative law judge of the Office of Administrative Hearings" does not apply to APS proceedings because a DMV hearing officer is not an administrative law judge. Applying this interpretation to the facts, the drivers' writ petitions were timely, and the issues reserved for the second stage needed to be addressed.

The second stage addressed whether the DMV hearing officers abused the discretion granted by section 11524, subdivision (b) when they determined the drivers' requests to continue their APS hearings were untimely and denied them. As explained below, we conclude the denials of the requested continuances were a prejudicial abuse of discretion. We further conclude the proper remedy is to provide the drivers with new APS hearings that address the merits for their challenges to the suspension orders.

We therefore reverse the denial of the drivers' writ petitions and remand for further proceedings.

### FACTS

*Overview*

Appellants are persons whose California driver's licenses were suspended by the DMV after they were arrested for driving under the influence (collectively, Drivers). Each driver was served with an order suspending his or her driver's license and

---

[1] Undesignated statutory references are to the Government Code.

subsequently requested an APS hearing.[2]  The relevant APS hearings on the license suspensions were set in early 2019.  Drivers have been represented by Attorney Richard O. Middlebrook throughout the administrative and judicial proceedings.

In each APS proceeding, the driver requested a continuance of the hearing due to a conflict with Attorney Middlebrook's court calendar.  The requests for a continuance that are relevant to this appeal were made in January through April 2019.  The requests were denied, the APS hearing proceeded as scheduled, and the DMV issued a written decision reimposing the license suspension.  The administrative decisions stated the driver or the driver's representative "did not appear for the indicated hearing nor was any evidence presented on your behalf and a notice of action against your driving privilege in this case was not returned unclaimed."

Drivers' petitions for writ of mandate assert that for nearly two decades the policy of the DMV Bakersfield Driver Safety Office (BDSO) towards continuances required requests for continuances based on good cause to be made at least 10 days before the APS hearing date, but also allowed requests to be made less than 10 days in advance of the APS hearing when other trials or court hearings went forward, were extended beyond the time anticipated, or trailed.  Drivers contend this practice reflected the vagaries of the criminal court calendar where scheduled court events represented possible conflicts with APS hearings set for the same time, but those court events often would not result in an actual conflict necessitating the continuance of the APS hearings.  The writ petitions assert that when an actual conflict did not arise, the APS hearings could go forward.  For example, if a trial scheduled to begin on a particular day was "trailed," the attorney acting

---

[2]    The procedure involving the immediate suspension of the driver's license of a person who drove with a blood-alcohol concentration (BAC) of .08 percent or more "is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration."  (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155; see Veh. Code, § 13353.2, subd. (a)(1).)

as trial counsel would become available to appear in APS hearings scheduled for later that day. Alternatively, when court proceedings went forward and created an actual conflict with a scheduled APS hearing, the DMV routinely would grant last minute continuances of the APS hearings.

Around 2017, the DMV appointed a new local manager for the BDSO, Christopher Pitchford. Manager Pitchford began making changes in the way the BDSO scheduled APS hearings and handled continuances. He required that requests for continuance based on conflicts with court trials and hearings be made at least 10 days in advance, based on the perception that nearly all such trials and hearings were scheduled more than 10 days in advance. Attorney Middlebrook and others contacted Mr. Pitchford and explained that, because they were scheduled for trials and court hearings nearly every single week, the new policy would force them to request continuances for nearly all APS hearings, which would prevent them from conducting APS hearings when the trials were settled, continued, or dismissed. The attorney asserted these dispositions of court matters often occurred, which opened their schedules and allowed them to conduct APS hearings.

Drivers alleged that Manager Pitchford insisted on implementing the new policy requiring continuance requests to be made 10 days in advance and, accordingly, requests for continuance were made on that basis. As a result, continuance requests were made in nearly all APS proceedings and the DMV granted those requests for almost two years. Attorney Middlebrook asserts that during the two-year period the policy was in place, he conducted only two APS hearings and "continuances were scheduled at least two-months out but ha[d] been scheduled as much as six-months out," with rescheduling sometimes taking over a year.

In July 2018, Manager Pitchford phoned Attorney Middlebrook's office to speak with him about continuances. Attorney Middlebrook stated they agreed to return to the old system that allowed last minute continuances when necessary—that is, when an

actual conflict arose with court proceedings instead of when there were potential conflicts.

In December 2018, the DMV reassigned Manager Pitchford and replaced him with a part-time interim manager, Michael Windover, from the DMV's Oxnard Driver Safety Office. Attorney Middlebrook did not know this change was being made. With the change in managers, requests for a continuance made by Attorney Middlebrook began to be denied as untimely and the APS hearings were conducted without the driver or counsel being present, which resulted in the DMV issuing decisions reinstating the suspensions. Drivers contend over 70 APS hearings were conducted by the DMV in abstentia between January 17, 2019, and April 19, 2019. The specific details of each Drivers' APS proceedings will not be described in this opinion, but a few examples will be provided.

*Granados*

Andrew Granados was arrested for driving under the influence on November 10, 2018. His APS hearing was scheduled for January 4, 2019, at 11:15 a.m. On January 4, 2019, at 8:09 a.m., a legal assistant from Attorney Middlebrook's office faxed the BDSO a letter requesting a continuance of the APS hearing due to Middlebrook's illness. Later that day, Driver Safety Hearing Officer Raul Boone issued a letter stating: "Your request is granted."

On January 7, 2019, the BDSO sent Attorney Middlebrook a notice stating Granados's APS hearing had been rescheduled for January 17, 2019, at 11:15 a.m. Also on January 7, 2019, the Kern County Superior Court rescheduled the jury trial in Jose Bravo's second degree murder case to January 16, 2019, so discovery related to an expert witness for the prosecution could be provided to the defense. Based on the conflict with the Bravo trial, Attorney Middlebrook sent the BDSO a letter dated January 14, 2019, requesting a continuance of Granados's APS hearing.

On January 17, 2019, at 10:49 a.m., Hearing Officer Boone faxed Attorney Middlebrook a form stating the request for a continuance of Granados's APS hearing "is

6.

denied because: the trial regarding People v. J. Bravo … did not go forth as stated on your Request for Continuance letter dated January 14, 2019, therefore, I will expect you to appear for the hearing scheduled at 11:15 AM on January 17, 2019." At 10:55 a.m. that day, Attorney Middlebrook faxed another letter requesting a continuance of Granados's APS hearing. The letter described a telephone conversation the day before between Attorney Middlebrook and Hearing Officer Boone about the Granados continuance and the continuance of the Bravo trial to April 2019. The letter also described Attorney Middlebrook's court appearances for that day in Ridgecrest and Porterville and stated he was unable to attend the APS hearing scheduled for 11:15 a.m.

The Ridgecrest appearances were set for 10:30 a.m. and included a motion hearing in Jamie Graus's driving under the influence case and a pretrial conference in Michael Melnichak's driving under the influence case. Graus's hearing had been continued to January 17, 2019, on January 15, 2019. The Tulare County Superior Court located in Porterville scheduled pretrial conferences in the cases of Eliseo Fernandez, Justine Zike, and others for 10:00 a.m. on January 17, 2019.

Hearing Officer Boone went forward with Granados's January 17, 2019 APS hearing as scheduled and issued a notification of findings and decision later that day. The decision stated: "You or your representative did not appear for the indicated hearing nor was any evidence presented on your behalf and a notice of action against your driving privilege in this case was not returned unclaimed." The decision found the three criteria for upholding the suspension order had been proven by the DMV's evidence—that is, the peace officer had reasonable cause to believe Granados was driving under the influence, the arrest of Granados was lawful, and Granados had driven a motor vehicle with a BAC of .08 percent or more. Accordingly, the decision reimposed the suspension of his driving privilege, effective January 26, 2019.

During the week of January 28, 2019, Attorney Middlebrook and Attorney Gabrielle LaCarre met with Manager Windover to discuss the denials of continuance and

7.

the problems created. The attorneys left the meeting believing Manager Windover had agreed to return to the previous practice of allowing continuances to be made with short notice when actual conflicts with court cases arose. However, when Attorney LaCarre sent an e-mail requesting confirmation that the denials had been set aside and the hearings would be rescheduled, Manager Windover responded with an e-mail stating he had not yet made a decision, but even if a new hearing was granted, the DMV would not return the affected Drivers to their license status.

On February 4, 2019, Granados and four other Drivers filed petitions for writ of mandate. Later in February, Attorney Middlebrook had discussions with the Attorney General's Office but no agreement was reached, those cases went forward, and more petitions for writ of mandate were filed.

*Reese*

Jacob Reese was arrested for driving under the influence on July 15, 2018. His APS hearing relevant to this appeal was scheduled for January 23, 2019, at 1:15 p.m. On January 15, 2019, Attorney Middlebrook faxed the BDSO a letter requesting a continuance of Reese's APS hearing based on the expectation that Bravo's jury trial would begin the following day and take about 10 days. The letter was essentially the same as Granados's January 14, 2019 letter requesting a continuance. On Friday, January 18, 2019, Driver Safety Hearing Officer Lisa Witt issued a notice stating the request was denied because the Bravo trial did not go forward. The following Monday was a holiday—Martin Luther King, Jr. Day.

On Tuesday, January 22, 2019, at 3:16 p.m., Attorney Middlebrook faxed the DMV another letter requesting a continuance of Reese's APS hearing because the misdemeanor cases of Nicholas Orozco and Sawyer Minton had been trailed to January 23, 2019, and one was expected to go forward. The letter recounted the past practice of the BDSO for handling requested continuances based on court conflicts, described the difficulties created by the DMV's change in its practice, stated criminal cases had

8.

precedence over all civil matters and administrative proceedings pursuant to Penal Code section 1050, referred to the DMV Driver Safety Manual and its examples of good cause for a continuance of an APS hearing, and requested a continuance of Reese's APS hearing.

On January 23, 2019, Manager Windover issued a denial of the continuance request, stating the previous request was denied because the Bravo trial did not go forward, the subsequent request was untimely, and counsel was expected to appear at the APS hearing. Later that day, Manager Windover issued a notice of findings and decision stating neither Reese nor his representative appeared at the APS hearing, no evidence was presented on Reese's behalf, and the suspension of Reese's driving privilege was reimposed. Like Granados, Reese filed his petition for writ of mandate on February 4, 2019.

*Carter*

Gerald Carter was arrested for driving under the influence on January 20, 2019. On February 7, 2019, the DMV mailed Attorney Middlebrook documents that included a (1) notice of hearing dated February 7, 2019, stating Carter's APS hearing was to be held at 11:15 a.m. on April 8, 2019, before Hearing Officer Witt; (2) a notice of stay of the suspension pending the outcome of the APS hearing; (3) a request for discovery; and (4) the officer's statement on form DS 367, the arrest report, the traffic collision report, and blood test results. The latter category of documents was sent to comply with the discovery provisions of section 11507.6.

On March 22, 2019, Carter requested a continuance of the Monday, April 8, 2019 APS hearing. A similar request was made for the April 8, 2019 APS hearing for Jamie Perea. The requests were prepared and signed by Attorney LaCarre and stated, on April 8, 2019, "I will be getting sent out to trial on one of two pending jury trials in the downtown Kern County Superior Court." The defendants in the cases were Brent Spears and Spring Bunting. The use of "I" was an error because Attorney Middlebrook was

9.

handling both the APS hearings and the two trials. This error was evident on the face of the letter requests because the requests referred to the Bunting case being "sent out if both the Deputy District Attorney and Mr. Middlebrook announce ready" and, after providing an estimate of the time required for the trials, stated that "Mr. Middlebrook will be unavailable from Monday April 8, 2019 through Friday April 19, 2019."

In a letter dated March 29, 2019, Hearing Officer Witt stated: "The request is denied. In this case the Admin Per Se hearing was scheduled on January 23, 2019. The two pending court trial cases cited in your motion for continuance were scheduled after January 23, 2019. There is no evidence or facts stated to support good cause showing that you informed the court of the pending Admin Per Se hearing, or what diligent effort was made to avoid this conflict. [¶] Additionally, the motion stated that Attorney Lecarre [*sic*] will be appearing at the court trials, not Attorney Middlebrook. [¶] Therefore, Counsel is expected to appear for the hearing at the previously scheduled date and time."[3]

On April 4, 2019, Attorney Middlebrook faxed a letter to Hearing Officer Witt stating he understood there were two reasons for the denial—there being no conflict because Attorney LaCarre was trying the cases and the court had set trials in cases for the same week when the DMV's APS hearings were scheduled. The letter then stated:

> "As to the first, we own the error. However, it was clear from the context of the letter that the need for a continuance was due to MR. MIDDLEBROOK'S unavailability due to trial, not Ms. LaCarre. There would be no reason to request the continuance if Ms. LaCarre was trying the cases.

> "As to the second issue, you have a clear misunderstanding of how the judicial system works and what role an attorney plays in that system.… [¶] Under Penal Code Section 1050, as we have discussed before, criminal hearings MUST proceed before civil hearings which include Admin Per Se Hearings. Of course, those who have been schooled in the law, practiced for at least 10 years as lawyers, advanced to appointment or election as

---

[3] No document in the administrative record provided to this court or the parties appendices show that on January 23, 2019, Carter APS hearing was set for April 8, 2019.

Judge, and have served in that capacity for some time know this. [¶] The courts (and by courts we are referring to Judges) are required to move cases expeditiously for public safety, witness and party issues. They are charged with doing so before permitting civil cases to proceed or to interfere with the advancement of criminal proceedings. That's a law.

"In the case at hand, the [BDSO] set this hearing without consulting with our office and over our objections. The case was set February 7, 2019 and received in our office February 11, 2019. The trials were set January 28, 2019 by Judge Tiffany Organ Bowles."

The letter explained that superior courts set cases for trial without concern for the DMV's calendar and then stated:

"It seems a lifetime ago that all this was so easy, and 10-20 DMV proceedings were occurring a week. Until Mr. Pitchford's modification of policy on his own and without any statutory authority two years ago, we had almost no problems. We would schedule afternoon hearings on Tuesday, Wednesday and Thursday three deep. If a case went to trial or an unexpected delay in cases occurred, last minute continuances were always granted. Hearings proceeded once discovery was received 95% of the time.

"We did get some prolonged cases. But that was because the [BDSO] was left with one hearing officer (Raul Boone) for years. Some cases when being set or continued took almost two years just to get a new date. This was the DMV stranding Mr. Boone on an island and expecting him to handle the work of three hearing officers.

"While Mr. Pitchford saw the error of his decision and sought to return to a productive scheduling routine, Mr. Windover's overruling (without notification) of Mr. Pitchford's return to prior policy set us back … again on this track."

On April 5, 2019, Hearing Officer Witt faxed Attorney Middlebrook a letter denying his renewed request for a continuance. The letter disagreed with the procedural history given in the renewed request, stating that (1) the April 8, 2019 APS hearing had been scheduled with the cooperation of Attorney Middlebrook's office on January 23, 2019; (2) discovery was requested; and (3) the discovery response was sent to Attorney Middlebrook's office on February 7, 2019, along with the notice of hearing. Witt's letter also stated:

11.

"Once again, your request does not include any facts specific to this request to support good cause showing that *you* informed the court of *this* pending Admin Per Se hearing, or what diligent effort *you* made to avoid this conflict. This should include why you or your office agreed to trial on April 8, 2019 with the knowledge of a scheduled Admin Per Se hearing on the same day? If you did inform the court of the scheduling conflict, what was the response? [¶] Therefore, Counsel is expected to appear for the hearing at the previously scheduled date and time."

At 3:03 p.m. that day, Attorney Middlebrook faxed Hearing Officer Witt a letter stating:

"We are in receipt of your letter faxed today. You have an unbelievable misunderstanding of how courts work. It is a little terrifying that you believe Attorney's pick dates for trial. [¶] Courts assign dates for trial and all other hearings. Attorney's [*sic*] appear as ordered. [¶] The dates chosen and times chosen were not agreed to by our office. We were told the dates and time. There is zero agreement. [¶] Please review how court procedures work and review our prior letter. Please avoid another writ and grant this continuance due to good cause."

Hearing Officer Witt signed a notice of findings and decision dated April 23, 2019, that stated Carter's APS hearing was held on April 23, 2019. Nothing in the administrative record shows that the APS hearing scheduled for April 8, 2019, was rescheduled for April 23, 2019. The decision included the following: "Other Finding: Counsels requests for continuance dated March 22, 2019 and April 4, 2019 were denied as there was no evidence or facts stated to support good cause showing when Counsel knew about this conflict, if Counsel informed the court of the pending administrative hearing or what diligent effort was made to avoid this conflict." The decision noted that Carter or his representative did not appear at the hearing and reimposed the suspension of Carter's license. Drivers' writ petition alleged the decision gave the incorrect APS "hearing date of April 23, 2019, when the hearing was set and heard on April 8, 2019." Carter filed his petition for writ of mandate on April 18, 2019.

*Datiz*

Javier Datiz was arrested for driving under the influence on July 12, 2018. His APS hearing was scheduled for 2:15 p.m. on April 18, 2019, before Hearing Officer

Boone.  On April 5, 2019, Attorney Middlebrook requested a continuance of Datiz's APS hearing because he would be in Kern County Superior Court appearing in Jesus Diaz's case and "the hearing is set to begin on Thursday April 18, 2019 at 8:30 AM until 4:00 PM.  As a result, I will be unavailable on Thursday April 18, 2019."

On April 18, 2019, at 1:36 p.m. (39 minutes before the scheduled hearing), Hearing Officer Boone faxed Attorney Middlebrook's office a letter stating Datiz's request for a continuance submitted on April 5, 2019, and refaxed on April 18, 2019, was denied.  The letter stated the April 18, 2019 hearing date had been set on February 4, 2019, with the agreement of "Marisol from your office."  After describing the timing and good cause requirements of section 11524, the letter stated:  "Your request does not include any facts to support good cause.  It does not appear that you informed the DMV of this pending trial to avoid this conflict.  Why did you agree to an Admin Per Se hearing on February 4, 2019, for April 18, 2019, when you had already scheduled a motion on March 28, 2019, or inform the department of your motion in March 2019."

On April 19, 2019, Hearing Officer Boone signed and mailed a notification of findings and decision stating the APS hearing had been held on April 18, 2019, Datiz and his representative did not appear at the hearing, and the April 5, 2019 continuance request had been "denied because there was no evidence or facts stated to support good cause."  The decision found the three criteria for upholding the suspension order had been proven by the DMV's evidence.  Accordingly, the decision reimposed the suspension of Datiz's driving privilege.

*Mody and Lopez Vega*

Samir Mody was arrested for driving under the influence on July 16, 2018.  Alexis Lopez Vega was arrested for driving under the influence on April 20, 2016.  On February 5, 2019, the DMV mailed Attorney Middlebrook notices of hearing stating the APS hearings for Mody and Lopez Vega would be held on April 19, 2019, at 1:15 p.m. and 3:30 p.m., respectively.

13.

On April 10, 2019, Attorney Middlebrook faxed separate letters to the DMV requesting the APS hearings be continued because he would be in trial in the Kern County Superior Court in the cases of Jason Alexander and Ann Campbell. The letters stated the matters had been expected to be continued, but new prosecutors had been assigned and Attorney Middlebrook was "informed today they will not agree to the continuance of the cases."

The continuance requests were denied by the hearing officers in letters to Attorney Middlebrook dated April 11, 2019. Both letters stated the APS hearings had been "scheduled with the cooperation of your office on February 4, 2019." The letter addressing Mody's APS hearing stated his request was not timely and did not include any facts to support good cause and supported these assertions by stating: "It does not appear that you informed the court of this pending Admin Per Se hearing and you have not provided the Trier of Fact what diligent effort you have made to avoid this conflict. Why did you agree to a trial on April 8, 2019, with the knowledge of a scheduled Admin Per Se hearing? Did you inform the court of the scheduling conflict? If you did inform the court of the conflict what was the courts response?" The letter addressing Lopez Vega's APS hearing stated: "Your request does not include any facts specific to this request to support good cause showing that you informed the court of this pending Admin Per Se hearing, or what diligent effort you made to avoid this conflict. If you did inform the court of the scheduling conflict, what was the response?"

On April 16, 2019, Attorney Middlebrook's office faxed separate letters to the DMV responding to the denials and providing a history of the Campbell case's pretrial hearings scheduled in April, June, August and November of 2018 and the April 5, 2019 pretrial hearing. The letter asserted the April 5, 2019 pretrial hearing was when "we first learned that the case would be going to trial" and, upon becoming aware of the impending trial, "we sent a request for continuance" of the APS hearings. The letters also

14.

stated, "our office does not have the ability to predict the future, read the minds of the Deputy District Attorneys, or control the rulings and orders of a Superior Court Judge."

On April 17, 2019, the DMV responded with letters stating the online docket for the Alexander and Campbell cases showed the trials were continued from April 15, 2019, to April 29, 2019 and counsel was expected to appear for APS hearings at the previously scheduled date and times. Later that day, Attorney Middlebrook's office faxed separate letters to the DMV acknowledging the accuracy of the information about the Alexander and Campbell cases and requesting a continuance based on 17 pretrial hearings scheduled for April 19, 2019. The letters stated that the superior court provides a date for continued matters and "we do not have a choice but to appear on those dates or our clients will suffer the consequence of Bench Warrant being issued for their arrest." The letters also stated: "While our office has brought up the issue of DMV Hearings and potential conflict, the response from not only Judge Organ-Bowles, but also Judge Zulfa, and Judge Wyatt, has been that the DMV has no influence or bearing on the Superior Court's calendar management."

On April 18, 2019, the DMV responded with letters denying the requests for a continuance and stating good cause was not demonstrated because (1) the pretrial hearings were all scheduled for 8:30 a.m. and would not conflict with the APS hearings set in the afternoon, (2) the hearing officers had learned that Attorney Middlebrook was out of the country, and (3) his office had recently scheduled ex parte hearings for April 19, 2019, at 1:30 p.m. in the Kern County Superior Court.

On April 19, 2019, at approximately 7:57 a.m., Attorney LaCarre faxed letters to the DMV asserting the conflict with the pretrial hearings only after the trials had been continued and the pretrial hearings were able to proceed. The letter confirmed that Attorney Middlebrook was out of the country, stated Attorney LaCarre would handle the court appearances, and asserted that 12 ex parte hearings before Judge Lampe involved writ proceedings by other drivers whose continuance requests were denied and sought to

15.

stay of the DMV's orders suspending their licenses pending the outcome of the writ proceedings.

At 12:23 p.m. on April 19, 2019, the DMV faxed Attorney Middlebrook's office a letter denying the request to continue Mody's APS hearing. At 1:21 p.m., the DMV faxed a similar letter denying the request to continue Lopez Vega's APS hearing. The letters stated the conflicts cited were of counsel's own making and do not demonstrate good cause.

On April 19, 2019, Hearing Officer Boone signed and mailed a notification of findings and decision stating Mody's APS hearing had been held on April 19, 2019, Mody and his representative did not appear at the hearing, and the four continuance requests had been denied for lack of good cause. The decision found (1) the peace officer had reasonable cause to believe Mody was driving under the influence, (2) the arrest was lawful, and (3) Mody had driven a motor vehicle with a BAC of .08 percent or more. Accordingly, the decision reimposed the suspension of Mody's driving privilege.

On April 30, 2019, Hearing Officer Witt signed and mailed a notification of findings and decision stating Lopez Vega's APS hearing had been held on April 30, 2019, Lopez Vega and her representative did not appear at the hearing, and continuance requests had been denied cause. The decision found the DMV's evidence had proven the three criteria for upholding the suspension order. Accordingly, the decision reimposed the suspension of Lopez Vega's driving privilege.

Mody and Lopez Vega filed petitions for writ of mandate on April 24, 2019.

## PROCEEDINGS

Drivers filed petitions for writ of mandate in the superior court pursuant to Vehicle Code section 13559, asserting the suspensions were invalid because the DMV hearing officer abused his or her discretion by denying the requested continuances. The first writ petitions were filed on February 4, 2019, and the last of Drivers' writ petitions were filed on April 24, 2019. The DMV's answers contained a general denial, stated its decision

16.

was not an abuse of discretion, asserted the request for a continuance was untimely, and (in some cases) stated the writ petition was time barred. The superior court consolidated Drivers' writ proceedings under *Cisneros v. Department of Motor Vehicles*, Kern County Superior Court case No. BCV-19-100294.

*Superior Court's Decision*

The consolidated cases were tried on December 5 and 6, 2019. In January 2020, the superior court issued a written tentative decision, directed the parties to simultaneously file posttrial briefs, and stated the matter would be deemed submitted on the briefing deadline.

The superior court's tentative decision included a section setting forth its analysis of legal issues applicable to all the consolidated cases. The court determined that the provisions of section 11524 governed the APS hearings, "as far as applicable" pursuant to Vehicle Code section 14112, subdivision (a). The court also stated that subdivision (b) of section 11524 required a party seeking a continuance to be diligent and demonstrate good cause for a continuance.

In addition, the tentative decision stated Drivers were not subject to the 10-day limitation period in section 11524, subdivision (c) for seeking judicial relief from a denial of a continuance of certain types of state agency hearings. The tentative decision quoted the statutory text referring to a continuance "denied by an administrative law judge of the Office of Administrative Hearings" (§ 11524, subd. (c)) and stated the DMV hearing officers were not administrative law judges. As a result, the tentative decision concluded subdivision (c) of section 11524 did not apply, and Drivers' writ petitions were subject to the 30-day limitation period in Vehicle Code section 13559, subdivision (a). In February 2020, after considering the final round of briefing, the superior court issued a ruling adopting its tentative decision.

Here, we set forth the superior court's reasoning for denying the writ petitions of Granados, Reese, Carter, Datiz, Mody and Lopez Vega. Details about those Drivers'

17.

requests for continuances and the DMV's denial of the requests were set forth in the FACTS section. In denying the writ petitions of these Drivers, the superior court stated the denials of their requests to continue their APS hearings "did not exceed the hearing officer's authority. Denying the continuance was not arbitrary, capricious or an abuse of discretion."

The superior court explained the denial of Granados's writ petition by stating the Bravo trail was the only basis stated in the first request to continue the January 17, 2019 APS hearing and, when that trial was continued, the hearing officer understandably expected the APS hearing to proceed as scheduled. The court also stated the "subsequent, last-minute request to continue the APS hearing was based on matters that could have been, but were not, previously disclosed to the DMV hearing officer. [Granados] unreasonably delayed in seeking the continuance and failed to show good cause."

The superior court explained its denial of the writ petitions of Reese and two other Drivers with APS hearings scheduled for January 23, 2019, by stating the Bravo trial was the only basis stated in their first request, the hearing officer understandably expected the January 23, 2019 hearing to proceed when the Bravo trial was continued, their subsequent requests were based on counsel's expected involvement in the Orozco and Minton trial, and the denial of those requests were proper and within the hearing officer's discretion because Reese unreasonably delayed in seeking the continuance and failed to show good cause.

The superior court explained its denial of the writ petitions of Carter, Mody and Lopez Vega and its conclusion that the hearing officers did not abuse their discretion by stating Drivers "unreasonably delayed in seeking the continuance and failed to show good cause. *Gov. Code § 11524(b)*." The court's ruling on Datiz's writ petition stated that Datiz's counsel apparently scheduled the court hearing knowing the April 18, 2019 APS hearing was already scheduled, it was unlikely the hearing would consume the full day (particularly for a misdemeanor case), and no explanation was offered for why it

18.

would. Thus, the court concluded Datiz "unreasonably delayed in seeking the continuance and failed to show good cause."

On June 4, 2020, the superior court filed a "JUDGMENT IN CONSOLIDATED MATTERS" to implement its ruling. In 22 of the cases, the petition for writ of mandate was granted, the DMV was directed to conduct a new administrative hearing, and judgment was entered in favor of the driver. In 17 of those cases, the court awarded the prevailing Driver attorney fees pursuant to section 800 in an amount to be determined upon filing an appropriate motion. The DMV appealed from the judgment, challenging the award of attorney fees to the 17 prevailing Drivers. This court assigned the DMV's appeal case No. F081372.[4]

The judgment denied the 51 writ petitions of Drivers. Drivers appealed the denials of their writ petitions and the matter was assigned case No. F081373.

*Stage One*

In August 2020, the DMV requested that the appeals in case Nos. F081372 and F081373 be consolidated and decided in two stages, with the first stage addressing whether section 11524, subdivision (c)'s 10-day time limit for seeking judicial review of an administrative law judge's denial of a continuance was applicable to the DMV's APS hearings. The DMV stated the issue appeared to affect 15 cases in the DMV's appeal and 22 cases in Drivers' appeal and that resolving the timeliness issue could significantly streamline briefing the merits. After obtaining further information from the parties, this court consolidated to two appeals and established a briefing schedule for the first stage.

In July 2021, the briefing of the first stage was complete. The parties requested oral argument, which was held in April 2022. On April 8, 2022, we filed an order and tentative decision stating (1) the 10-day time limit in section 11524, subdivision (c) did

---

**4** In May 2024, this court affirmed 16 of the fee awards and awarded those Drivers their costs and attorney fees on appeal. (*Atkinson v. Department of Motor Vehicles* (2024) 102 Cal.App.5th 997, 1003.)

19.

not apply to Drivers' writ petitions; (2) that statutory interpretation would control for the remainder of the appeal; and (3) the final opinion issued after the second stage would include that statutory interpretation, which would allow the DMV to challenge that interpretation in a petition for review of the final opinion.

*Stage Two*

After the parties were unable to agree on a joint record for the second stage, we vacated the consolidation order. As a result, the appellants in each appeal were responsible for preparing a record adequate to support their claims of error. Drivers' appeal proceeded under case No. F081373 and briefing in that appeal was completed in October 2023. Parts I. and II. of this opinion, with some modifications to the analysis, set forth the statutory interpretation adopted in our April 2022 order and tentative decision.

## DISCUSSION

### I. STATUTORY CONSTRUCTION

The interpretation of section 11524, subdivision (c) presents a question of law subject to de novo review on appeal. (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.) The parties agree the de novo standard of review applies.

The principles applied when interpreting California statutes are well established. (*People v. Castillolopez* (2016) 63 Cal.4th 322, 329.) A court's " 'role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Ibid*.) Courts " 'look first at the words themselves, giving them their usual and ordinary meaning' " because statutory language generally is the most reliable indicator of that intent. (*Ibid*.)

When the statutory language is clear and unambiguous, there usually is no need for further construction and courts adopt the plain (i.e., literal) meaning of that language. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 (*Lungren*).) "If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009.) In this context,

ambiguous means susceptible to more than one reasonable interpretation. (*Honchariw v. County of Stanislaus* (2013) 218 Cal.App.4th 1019, 1027.)

The plain meaning rule is not absolute. (*Lungren*, *supra*, 45 Cal.3d at p. 735.) A court must consider whether adopting the literal meaning of the statutory text (1) would frustrate the manifest purposes that appear from the provisions of the legislation when considered as a whole in light of its legislative history or (2) would result in absurd consequences that the Legislature clearly did not intend. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 [literal construction will not control when it frustrates manifest purpose of enactment as a whole]; *Smith v. LoanMe, Inc.*, *supra*, 11 Cal.5th at p. 190 [plain meaning followed unless it results in absurd consequences]; *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 567 [plain meaning of constitutional provision rejected to avoid absurdity].) Thus, a literal construction that leads to absurd results may be rejected for a construction that furthers the legislative intent apparent in the statute. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245.)

Whether statutory language is ambiguous or, alternatively, has a plain meaning, is a question of law subject to independent review on appeal. (*Wells Fargo Bank, N.A. v. 6354 Figarden General Partnership* (2015) 238 Cal.App.4th 370, 381.) When statutory language is susceptible to more than one reasonable interpretation, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. (*Ibid.*) The apparent intent of the Legislature is determined by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation. (*Lungren*, *supra*, 45 Cal.3d at p. 735.) Stated another way, the ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Ibid*.) In addition, courts determine the apparent intent underlying ambiguous statutory language by evaluating a variety of extrinsic aids, including the

ostensible objects to be achieved by the statute, the evils to be remedied, public policy, and the statute's legislative history. (*Wells Fargo*, *supra*, at p. 381.)

## II. LIMITATION PERIOD FOR DENIALS OF CONTINUANCES

### A. APS Proceedings

The DMV is required by statute to immediately suspend the driver's license of a person who is over 21 years of age and drives with a BAC of .08 percent or more, by weight. (Veh. Code, § 13353.2, subd. (a)(1).) Lower BAC levels apply to younger drivers. (Veh. Code, § 13557, subd. (b)(3)(C); *Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1537, fn. 1.) "When a driver is arrested for driving under the influence and is determined to have a prohibited [BAC], the arresting officer or the DMV serves the driver with a 'notice of [an] order of suspension or revocation' of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c), 13353.3, subd. (a).) The notice explains the driver's right to an [APS] hearing before the effective date of the suspension if the driver requests a hearing within 10 days of receipt of the notice. (*Id.*, §§ 13353.2, subd. (c); 13558, subd. (b).)" (*Brown*, *supra*, at pp. 1536–1537.)

At the APS hearing, the hearing officer determines whether three facts have been proven by a preponderance of the evidence—specifically, did the arresting officer have reasonable cause to believe the person was driving under the influence or with a prohibited BAC; was the driver arrested; and did the person drive with a prohibited BAC. (*Brown v. Valverde*, *supra*, 183 Cal.App.4th at pp. 1537–1538; Veh. Code, §§ 13557, subd. (b)(2), 13558, subd. (c)(1).) If the hearing officer determines these three facts are established by the evidence, the license will be suspended. The DMV's notice to a driver that the order of suspension or revocation has been sustained must "include notice that the person has a right to review by court pursuant to [Vehicle Code s]ection 13559." (Veh. Code, § 13558, subd. (f).)

When a person exercises his or her right to an APS hearing pursuant to Vehicle Code section 13558, the hearing is conducted pursuant to the requirements in Vehicle Code sections 14100 through 14106. For instance, an APS "hearing shall be conducted by the director or by a hearing officer or hearing board appointed by him or her from officers or employees of the department." (Veh. Code, § 14104.2, subd. (a).) Vehicle Code sections 14100 through 14106 do not address all procedural aspects of an APS hearing. To fill the gaps, "[a]ll matters in a hearing not covered by this chapter shall be governed, as far as applicable, by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." (Veh. Code, § 14112, subd. (a).) The chapter referred to is contained in California's Administrative Procedure Act (APA; § 11340 et seq.) and addresses agency adjudicative proceedings that involve a formal hearing. The "chapter applies to any agency as determined by the statutes relating to that agency." (§ 11501, subd. (a).) Therefore, chapter 5 of the APA applies to APS proceedings to the extent specified in Vehicle Code section 14112.

B.     Statutory Text

One procedural aspect of APS proceedings not addressed in the Vehicle Code is continuances of the hearing. Chapter 5 of the APA, however, addresses continuances in section 11524, which provides in full:

> "(a) The *agency* may grant continuances. When an *administrative law judge* of the Office of Administrative Hearings has been assigned to the hearing, no continuance may be granted except by him or her or by the presiding judge of the appropriate regional office of the Office of Administrative Hearings, for good cause shown.

> "(b) When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the good cause for the continuance. A continuance may be granted for good cause after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the good cause.

23.

"(c) In the event that an application for a continuance by a party is denied by an *administrative law judge* of the Office of Administrative Hearings, and the party seeks judicial review thereof, the party shall, within 10 working days of the denial, make application for appropriate judicial relief in the superior court or be barred from judicial review thereof as a matter of jurisdiction.  A party applying for judicial relief from the denial shall give notice to the *agency* and other parties.  Notwithstanding Section 1010 of the Code of Civil Procedure, the notice may be either oral at the time of the denial of application for a continuance or written at the same time application is made in court for judicial relief.  This subdivision does not apply to the Department of Alcoholic Beverage Control."  (§ 11524, italics added.)

The word "agency" and the term "administrative law judge" are italicized in the foregoing quote because they are defined by statute.  " 'Agency' includes the state boards, commissions, and officers to which this chapter is made applicable by law."  (§ 11500, subd. (a).)  There is no dispute that the DMV is an agency for purposes of chapter 5 of the APA.

" 'Administrative law judge' means an individual qualified under Section 11502."  (§ 11500, subd. (d).)  Section 11502, subdivision (a) refers to "administrative law judges on the staff of the Office of Administrative Hearings."  The director of the Office of Administrative Hearings is authorized to appoint a staff of administrative law judges.  (§ 11502, subd. (b); see § 11370.3.)  "Each administrative law judge shall have been admitted to practice law in this state for at least five years immediately preceding his or her appointment and shall possess any additional qualifications established by the State Personnel Board for the particular class of position involved."  (§ 11502, subd. (b).)

The DMV's regulations also address continuances.  California Code of Regulations, title 13, section 115.08 provides in part:  "(b)  Except as provided in subdivision (d), a motion to continue a case shall be made pursuant to Section 11524 of the Government Code."  The regulation's provisions that apply to all types of motions state:  "(c) Any motion shall state in plain language the relief sought and the facts and circumstances the moving party contends support the motion, and shall be supported by

legal authority. [¶] (d) A motion shall be made and filed at least 5 business days before the date set for the commencement of the hearing."

### C.    Plain Meaning

We conclude the language in subdivision (c) of section 11524 has a plain meaning on the question of whether judicial review of the DMV's denial of a continuance must be sought within 10 working days of the denial. That subdivision applies only when the continuance "is denied by an administrative law judge of the Office of Administrative Hearings." Because a DMV hearing officer does not satisfy the definition of "[a]dministrative law judge" set forth in section 11500, subdivision (d), a denial of a continuance by a DMV hearing officer falls outside the express terms of subdivision (c) of section 11524.

Courts usually adopt the plain meaning of the statute, unless a literal "construction would frustrate the manifest purpose of the enactment as a whole" (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 979) or "would result in absurd consequences the Legislature did not intend" (*Smith v. LoanMe, Inc.*, *supra*, 11 Cal.5th at p. 190). Consequently, the next steps of our analysis consider whether either exception to the plain meaning rule applies.

### D.    The Plain Meaning Does Not Produce Absurdities

The DMV contends that construing section 11524, subdivision (c) as applying only to continuance requests "denied by an administrative law judge of the Office of Administrative Hearings" would make no sense and lead to an absurd result. In the DMV's view, if subdivision (c) applies only in proceedings decided by an administrative law judge of the Office of Administrative Hearings, then only subdivision (b) would apply to DMV hearings, and not subdivision (a), which also contains language referring to an administrative law judge of the Office of Administrative Hearings.

We reject this reading of the statute. The first sentence of section 11524, subdivision (a) states in full: "The agency may grant continuances." The DMV is an

agency and, thus, this sentence authorizes the DMV to grant continuances of APS hearings. Vehicle Code section 14112, subdivision (a) provides that all matters in an APS hearing not covered by the Vehicle Code "shall be governed, as far as applicable, by Chapter 5" of the APA. Nothing in the wording of the first sentence of subdivision (a) of section 11524 makes it inapplicable to APS hearings. In contrast, the second sentence of the subdivision refers to situations "[w]hen an administrative law judge of the Office of Administrative Hearings has been assigned to the hearing." (§ 11524, subd. (a).) Because an "administrative law judge of the Office of Administrative Hearings" is not assigned to an APS hearing, that sentence is not applicable to APS hearings.

We conclude the foregoing interpretation of section 11524 is not absurd. The authority to grant continuances is given to the DMV by the first sentence of subdivision (a). The first sentence, without the remainder of the subdivision, can be applied without leading to an absurd result. The second sentence, which states that when an administrative law judge has been assigned to a hearing, only he or she may grant a continuance of the hearing, is not essential to avoid absurdity. For instance, the absence of an explicit limitation on continuances of APS hearings leaves open the possibility that such a hearing could be continued by a DMV employee other than the hearing officer. (See Veh. Code, § 14104.2, subd. (a) [who conducts an APS hearing].) Without an explicit provision limiting the authority to grant continuances to hearing officers, the DMV retains flexibility, subject to the constraints of due process. For example, if a hearing officer becomes temporarily incapacitated, the appointment of a new hearing officer in each case assigned to the incapacitated hearing officer would not be required before those cases could be continued. This flexibility would avoid the additional formality for removing the new hearing officer and reappointing the original hearing officer to the continued cases once he or she returns to work.

DMV's July 2021 reply brief addresses absurdity from a different angle, contending its interpretation presents a "sensible statutory framework: Subdivision (a)

26.

provides the good cause standard. Subdivision (b) provides procedures for requesting a continuance, and Subdivision (c) provides the procedures for challenging a denial of a continuance." DMV argues Drivers' interpretation produces the absurdity that "DMV hearing officers would have discretion to deny continuances, with neither a standard nor a mechanism for review of any denial of a continuance." DMV contends this is not what the Legislature intended.

The DMV's argument is flawed because it is based on a false premise—namely, that "[t]he 'good cause' standard is <u>only</u> found in the second sentence of Section 11524(a)." The term "good cause" also appears in both sentences of subdivision (b) of section 11524. The first sentence states: "When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the *good cause* for the continuance." (§ 11524, subd. (b), italics added.) The second sentence states: "A continuance may be granted for *good cause* after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the *good cause*." (§ 11524, subd. (b), italics added.) The three references to "good cause" in subdivision (b) of section 11524 are sufficient to establish good cause as the standard for obtaining a continuance of an APS hearing. (See *Petrus v. Department of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244 ["section 11524 provides that a continuance should be granted for good cause shown"]; *Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 865–864 (*Bussard*) [continuance of APS hearing may be granted in the discretion of the hearing officer upon a showing of good cause].) Indeed, the superior court's February 2020 ruling repeatedly cited subdivision (b) of section 11524 as the source of the good cause requirement. Therefore, the DMV's claim of absurdity lacks merit because it wrongly contends that there would be no statutory standard for granting a continuance if the plain meaning of subdivision (c) of section 11524 is adopted.

Another aspect of the DMV's absurdity argument is that if subdivision (c) of section 11524 does not apply to APS hearings, there would be no procedure for challenging (i.e., obtaining judicial review of) a denial of an application for a continuance of the hearing. This argument fails because there is a mechanism for obtaining judicial review of the DMV's denial of a continuance. As explained in part III. of this opinion, relief may be obtained using a petition for writ of ordinary mandamus. When a request for a continuance is denied and the DMV's findings and decision issued after the hearing, the driver's writ petition can seek ordinary mandate to address the denial of the continuance and seek administrative mandate to address the findings and decision reinstating the suspension or revocation of the license.

This approach is akin to the way a litigant obtains judicial review of a superior court's denial of a continuance in a civil lawsuit. "A [superior court's] ruling on a motion for a continuance is not an appealable order." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) The denial of a requested continuance "is reviewable on appeal from the judgment." (*Ibid*.) Alternatively, when certain requirements are met, a litigant in a civil action need not wait for an appealable judgment but may seek review of a denial of a continuance by filing a petition for a writ of mandate with the appellate court. (E.g., *Padda v. Superior Court* (2018) 25 Cal.App.5th 25, 26, 30 [equities favored applying settled principles of law to the facts and issuing a writ directing the superior court to grant the continuance].) These two ways to obtain review of denials of continuances in civil lawsuits convinces us that it is not absurd to allow a driver (1) to, in appropriate circumstances, seek review only of a denial of a continuance request in a writ petition for ordinary mandate or (2) to combine a request for ordinary mandate with a request for administrative mandate in a writ petition timely filed after the findings and decision are issued. Stated another way, the absence of a provision for immediate judicial review of denials of continuances by hearing officers other than administrative law judges is not

absurd in the context of the APS system because judicial review is available in ways that parallels how a superior court's denial of a continuance in a civil lawsuit is reviewed.

### E. The Plain Meaning Is Not Contrary to Section 11524's Manifest Purpose

The DMV's opening brief argues that applying subdivision (c) of section 11524 to APS hearings is consistent with the legislative intent of the statute. This argument does not carry DMV's burden to affirmatively demonstrate prejudicial error because it does not apply the correct legal standard for rejecting the plain meaning of a statute. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellant has burden of affirmatively demonstrating prejudicial error].) For a court to reject the plain meaning of statutory text, it must be presented with more than an alternate interpretation that is consistent with legislative intent. The proponent of that alternate interpretation must demonstrate that a literal "construction would frustrate the manifest purpose of the enactment as a whole." (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 979.)

Applying this standard to the DMV's references to the legislative history presented, we conclude the Legislature did not manifest its intent or purpose to have section 11524, subdivision (c) apply to APS hearings. First, the DMV has not cited any legislative history with an explicit reference to APS hearings in particular or to the DMV in general. As a result, any conclusion that section 11524, subdivision (c) applies to APS hearings must be based on an inference drawn from the legislative history. Second, the DMV has not cited any legislative history implying that, contrary to its plain meaning, the provision for seeking judicial review of a denial of a continuance applies to all administrative hearings, regardless of whether the hearing is to be conducted by an administrative law judge of the Office of Administrative Hearings. Therefore, nothing in the legislative history makes clear the Legislature intended to have section 11524, subdivision (c) apply to the denial of a continuance of an APS hearing or, more generally, to the denial of a continuance of all administrative hearings conducted by an agency. The possibility that the efficiency concerns underlying the application of section 11524,

subdivision (c) to hearings conducted by an administrative law judge of the Office of Administrative Hearings might also apply to hearings conducted by other types of hearing officers does not manifest a legislative intent to include those other types of hearings.

     F.     <u>Surplusage Canon</u>

The canons of statutory interpretation aid courts in "ascertain[ing] the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com*. (1987) 43 Cal.3d 1379, 1387.) One of the canons states that courts generally "accord[] significance, *if possible*, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided." (*Ibid*., italics added.) We italicize the qualification "if possible" because of its significance in this appeal. The canon includes that limitation because sometimes all the potential interpretations of a statute negate some word or phrase of the statutory text. For this and other reasons, our Supreme Court recently reiterated that " 'the canon against surplusage is [merely] a guide to statutory interpretation and is not invariably controlling.' (*People v. Valencia* (2017) 3 Cal.5th 347, 381.)" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 21.)

Our Supreme Court's statements are consistent with the view expressed in a book addressing the relationship among the various canons of interpretation: "No canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." (Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) p. 59, boldface omitted, citing *Chickasaw Nation v. United States* (2001) 534 U.S. 84, 93 ["canons are not mandatory rules. They are guides that 'need not be conclusive' "].)

> "Principles of interpretation are guides to solving the puzzle of textual meaning, and as in any good mystery, different clues often point in different directions. It is a rare case in which each side does *not* appeal to a different canon to suggest its desired outcome. The skill of sound construction lies

in assessing the clarity and weight of each clue and deciding where the balance lies." (Scalia & Garner, Reading Law: The Interpretation of Legal Texts, *supra*, p. 59.)

For example, "[t]he canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute ....'" (*Chickasaw Nation v. United States*, *supra*, 534 U.S. at p. 94.)

In this appeal, the DMV invokes the surplusage canon in reference to the last sentence of section 11524, subdivision (c), which states that "[t]his subdivision does not apply to the Department of Alcoholic Beverage Control." In the DMV's view, the insertion of the specific exemption reveals that, absent that exemption, subdivision (c) would apply to the Department of Alcoholic Beverage Control. The DMV asserts that to give meaning or operative effect to the exemption in the last sentence of subdivision (c), the phrase "denied by an administrative law judge of the Office of Administrative Hearings" must be interpreted to cover administrative hearings of the Department of Alcoholic Beverage Control, even though such hearings are not conducted by an administrative law judge of the Office of Administrative Hearings. The last step of the DMV's argument asserts that if administrative hearings of the Department of Alcoholic Beverage Control conducted by hearing officers who do not qualify technically as administrative law judges are covered by subdivision (c) and need a specific exemption, then other administrative hearings, such as APS hearings conducted by the DMV, also are covered by subdivision (c).

The DMV's appellate briefing acknowledges that it did not find "any legislative history explaining the Department of Alcoholic Beverage Control exemption in Section 11524(c)." Drivers state that they were unable to locate any legislative history explaining the exemption. Our independent review of the legislative history did not find an explanation that the parties did not locate.

The DMV's application of the surplusage canon is not convincing because it does not actually result in an interpretation that " 'give[s] meaning to every word and phrase in the statute ....' " (*Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 39.) The DMV's interpretation negates the phrase "of the Office of Administrative Hearings" that modifies "administrative law judge" throughout section 11524 and overrides the definition of "administrative law judge" contained in section 11500, subdivision (d). Consequently, the DMV has not presented an interpretation that satisfies the surplusage canon. Its interpretation simply changes which words are surplusage. It does not appear possible to interpret section 11524 in a manner that gives meaning and effect to every word and phrase in the statute.

Consequently, this court must choose among the interpretations that render some of the statutory language surplusage. We conclude that adopting the plain meaning of the phrase "denied by an administrative law judge of the Office of Administrative Hearings" in subdivision (c) of section 11524 best effectuates the purpose of the statute. This interpretation does not *contradict* the express language of the statute. Instead, it merely renders the last sentence redundant.[5] Adopting the plain meaning of the phrase "an administrative law judge of the Office of Administrative Hearings" carries out the intent expressed in the last sentence and excludes hearings of the Department of Alcoholic Beverage Control from subdivision (c) of section 11524. In other words, it is not the type of interpretation that results in the subdivision being applied to the Department of Alcoholic Beverage Control, which would directly contradict the last sentence. In contrast, the interpretation offered by the DMV directly contradicts the intent expressed

---

[5] Jellum, *Mastering Statutory Interpretation* (2d ed. 2013) 133 ("Statutes are not always carefully drafted. Legal drafters often intend to include redundant language to cover any unforeseen gaps or they simply fail to identify the redundancy timely .... Thus, the presumptions [underlying the canon] simply do not match political reality."); Posner, *Statutory Interpretation—In the Classroom and in the Courtroom* (1983) 50 U. Chi. L.Rev. 800, 812 ("a statute that is the product of compromise may contain redundant language as a by-product of the strains of the negotiating process.").

by some of the statutory text by expanding its scope. An interpretation that contains a redundancy does less violence to the statutory text and is therefore preferred over an interpretation that changes the meaning of some phrases and eliminates others.

In summary, section 11524 governs continuances of APS hearings only "as far as applicable." (Veh. Code, § 14112, subd. (a).) The second sentence of subdivision (a) and all of subdivision (c) of section 11524 are not "applicable" to APS hearings because a DMV hearing officer is not an "administrative law judge of the Office of Administrative Hearings." Consequently, only the first sentence of subdivision (a) and all of subdivision (b) of section 11524 are applicable to APS proceedings. Thus, the superior court correctly rejected the DMV's argument that section 11524, subdivision (c)'s 10-day period for seeking judicial review of the denial of a continuance applied to Drivers' writ petitions.

## III.    ADMINISTRATIVE AND ORDINARY MANDAMUS PROCEEDINGS

Judicial review of the DMV's decision to sustain an order suspending a driver's license is addressed by statute. Vehicle code section 13559, subdivision (a) provides that, after an APS hearing and the DMV's issuance of a notice of determination sustaining an order of suspension or revocation, the driver "may file a petition for review of the order in the court of competent jurisdiction in the person's county of residence." (Veh. Code, § 13559, subd. (a).) The statute does not identify the type of petition.

Generally, a petition for writ of mandate is the proper method of obtaining judicial review of state agency decisions. (1 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2023) § 1.1, p. 1-1; 1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2023) § 1.2, p. 1-1 [most writ petitions seek a writ of mandate].) The term "writ of mandate" is synonymous with "writ of mandamus." (Code Civ. Proc., § 1084.) The Code of Civil Procedure provides for two types of mandate—ordinary mandate, which is sometimes called traditional mandate (Code Civ. Proc., § 1085), and administrative mandate (Code Civ. Proc., § 1094.5). (1 Cal. Civil Writ Practice, *supra*, § 1.2, p. 1-1 [types of writs of

33.

mandate]; Johnson & Taylor, California Driving Under the Influence Defense (Thomson Reuters 5th ed. 2023) § 4:20 [judicial review—writ of mandamus].)

The nature of the agency's action or decision under review determines which type of mandate applies. Administrative mandate is used only to review an agency's decision that resulted from "a proceeding in which, by law: (1) *a hearing is required to be given*, (2) evidence is required to be taken, and (3) discretion in the determination of facts is vested in the agency." (*Taylor v. State Personnel Bd.* (1980) 101 Cal.App.3d 498, 502.) In comparison, "ordinary mandate is used to review adjudicatory actions or decisions when the agency was not required to hold an evidentiary hearing." (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848.)

The appropriate type of mandamus for challenging the DMV's decisions was addressed by the parties in the superior court. Drivers' September 2019 supplemental opening brief referred to both administrative mandamus under Code of Civil Procedure section 1094.5 and ordinary mandamus under Code of Civil Procedure section 1085. Drivers argued that ordinary mandamus was appropriate to deal with the DMV's decisions denying their requests for a continuance. Drivers also asserted that, "to properly flesh out the issues, we need more than the baseline Administrative Record which §1094.5 would allow for. By viewing this collection of consolidated cases through the lens of §1085, we can rely on both the Administrative Records and the essential background built through Declarations, Continuance Request Letters, as well as the responses or failures to respond by the DMV."

The DMV's October 2019 master brief asserted Drivers' writ petitions were appropriately addressed under Code of Civil Procedure section 1094.5 and referred to the principle that administrative mandamus is used to review a decision resulting " 'from a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the agency.' (*DeCuir v. County of Los Angeles* (1998) 64 Cal.App.4th 75, 81.)" The DMV argued that ordinary

mandamus under Code of Civil Procedure section 1085 was appropriate only to challenge a failure to perform an act required by law other than at an administrative hearing. The DMV asserted *DeCuir* provides that administrative mandamus "also applies to the <u>denial</u> of a hearing (as here, with denied continuances)." Alternatively, the DMV stated that "it matters little whether the Court decides this under either the rubric of section 1094.5 or section 1085" because each Driver had failed to satisfy the requirements for a continuance and, thus, was not entitled to a new APS hearing.

A.     Suspension Orders Are Reviewed Under Administrative Mandate

A decision by the DMV to sustain an order of suspension or revocation after an APS hearing meets the three criteria for review by administrative mandate. (See *Taylor v. State Personnel Bd.*, *supra*, 101 Cal.App.3d at p. 502.) Consequently, it is well established that administrative mandate is used to obtain judicial review of a license suspension order. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395; *Music v. Department of Motor Vehicles* (1990) 221 Cal.App.3d 841, 843, fn. 2.) Suspension or revocation of an issued driver's license affects a vested, fundamental right and, as a result, a superior court must exercise independent judgment upon the evidence when reviewing such an order. (*Berlinghieri*, *supra*, at p. 395; *Munro v. Department of Motor Vehicles* (2018) 21 Cal.App.5th 41, 46; see Code of Civ. Proc., § 1094.5, subd. (c).)

B.     Orders Denying a Continuance Are Reviewed Under Ordinary Mandate

In contrast, a decision by the DMV to deny a request to continue an APS hearing does not meet all three criteria for review by administrative mandate because a hearing on the request is not required by law. Nothing in section 11524 requires the DMV to hold a hearing before ruling on a request for a continuance. California Code of Regulations, title 13, section 115.08, subdivision (e) provides in part: "A motion filed pursuant to this section may be decided by the department without oral argument." Based on this regulatory provision and the absence of a statutory provision to the contrary, we conclude

the DMV is not required to hold a hearing before deciding whether to continue an APS hearing. This interpretation is consistent with the record, which shows the DMV ruled on many continuance requests without holding a hearing. Accordingly, the DMV's orders denying a request to continue an APS hearing are reviewable under ordinary mandate. (Code Civ. Proc., § 1085.)

## IV.   CONTINUANCE OF AN APS HEARING FOR GOOD CAUSE

The master brief the DMV filed in the superior court stated it "does not dispute the general proposition that a conflict with a criminal matter might constitute good cause for a continuance, or that an attorney's unavailability may also constitute good cause. The issue here is, rather, the <u>timing</u> of the requests for continuance." On appeal, the DMV contends it properly exercised its statutory discretion when it denied Drivers' requests to continue their APS hearings because the requests were untimely and lacked good cause.

Quoting the DMV's master brief, Drivers contend the issue of whether there was good cause for granting the continuances is not before the court because the DMV has conceded conflicts between criminal court proceedings and APS hearings amount to good cause to continue the APS hearings. Thus, Drivers contend the issue is the timeliness of their requests and assert the trial court denied their writ petitions on the ground each driver unreasonably delayed in requesting the continuance.

### A.   Subdivision (b) of Section 11524

The timeliness of a request to continue an APS hearing is governed by section 11524, subdivision (b) (section 11524(b)), which provides:

> "When seeking a continuance, a party shall apply for the continuance within 10 working days following the time the party discovered or reasonably should have discovered the event or occurrence which establishes the good cause for the continuance. A continuance may be granted for good cause after the 10 working days have lapsed if the party seeking the continuance is not responsible for and has made a good faith effort to prevent the condition or event establishing the good cause."

36.

Section 11524(b) has been interpreted to mean "that a continuance should be granted for good cause shown." (*Petrus v. Department of Motor Vehicles, supra,* 194 Cal.App.4th at p. 1244; see also *Bussard, supra,* 164 Cal.App.4th at p. 864.)

The "10 working days" timeframe imposes a "reasonable diligence" requirement for a party seeking a continuance. (*Bussard*, *supra*, 164 Cal.App.4th at p. 864.) The "10 working days" timeframe should be evaluated from the point in time at which, from an objective standpoint, the basis for a requested continuance became "reasonably foreseeable." (See *ibid.*) The factors and considerations which influence the decision on a continuance can vary greatly from case to case. (*Ibid.*)

### 1.    Good Cause

Here, there is no dispute in the general sense that a conflicting court appearance in a criminal matter represents "good cause" to continue an APS hearing. This is consistent with Penal Code section 1050, which provides in part that "criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings." (Pen. Code, § 1050, subd. (a).) Each of Drivers' requests involve at times multiple conflicting criminal matters (trials or hearings) that were believed to conflict with an individual driver's APS hearing. Therefore, through operation of Penal Code section 1050, subdivision (a), there is a basis for "good cause" for each requested continuance.

### 2.    Timeliness

Next, we consider whether the requested continuances were properly denied as untimely. The crux of the issue boils down to the point in time that Drivers' counsel "discovered or reasonably should have discovered," (§ 11524(b)), the conflicting criminal matters. Our court's opinion in *Bussard* shows that this point in time when the need for the continuance became "reasonably foreseeable." (*Bussard*, *supra*, 164 Cal.App.4th at pp. 864–865 [explaining that a hearing officer's continuance during an APS hearing to obtain a witness's testimony was not an abuse of discretion because the need for the

witness's testimony had not been reasonably foreseeable before the APS hearing had begun].)

The DMV contends that all counsel will know there is a conflict the moment a new hearing (either an APS hearing or a criminal matter) is formally scheduled for the same day as an existing matter (either an APS hearing or a criminal matter). Drivers contend that usually a conflict between an APS hearing and a criminal matter is not sufficiently clear the moment the criminal matter is scheduled because criminal matters (particularly trials) often do not proceed as scheduled for a variety of reasons. Therefore, Drivers contend that it will only be at a later point in time when counsel knows with sufficient certainty that a scheduled criminal matter will likely conflict with an APS hearing. In other words, while both sides recognize the importance of the hearing date for a criminal matter, the DMV treats the date as per se establishing the existence of a conflict, while Drivers treat the date as generally establishing a potential conflict that is to be monitored.

There are practical concerns with both approaches. Drivers' approach could lead to "last minute" (though not necessarily unwarranted) continuances, while the DMV's approach could lead to continuances being unnecessarily granted far in advance of an APS hearing. On balance, we conclude Drivers' approach aligns with the "reasonably foreseeable" standard adopted in *Bussard*, *supra*, 164 Cal.App.4th at page 865, and is consistent with the nature and reality of criminal practice. Because the criminal courts of California are heavily impacted, criminal hearings and trials are often continued, reset, or trailed, or may "spill over" and require additional court time to resolve than initially scheduled. Further, since "*most* [criminal] cases are resolved by plea bargain" (*People v. Ellis* (2019) 43 Cal.App.5th 925, 942), a criminal case may resolve itself at any time before trial, thereby resulting in the cancellation of any prior scheduled trial or hearing.

Of necessity, criminal schedules have a significant degree of fluidity about them that strongly counsels against the DMV's position.[6]

Accordingly, section 11524(b)'s 10-working-day timeframe to timely request a continuance is triggered when it becomes reasonably foreseeable that the conflict producing event will likely occur. When the likelihood of conflict is reasonably foreseeable, it is then that counsel discovers or reasonably should discover the conflict. Whether a continuance should be granted will depend on the facts of each case. Nevertheless, where the conflict producing event is a *criminal trial or hearing*, it is not per se reasonably foreseeable that there will be a conflict on the date that the criminal matter is scheduled to proceed. Also, if a request for continuance is made within 10 working days of when it became reasonably foreseeable that the criminal conflict would likely occur—that is, when the attorney discovered or reasonably should have discovered the criminal matter was likely to proceed in conflict with an APS hearing—then the request is timely under the plain language of section 11524(b), irrespective of whether the request was made within 10 working days of the APS hearing. Finally, while it may request more information if needed, the DMV should generally consider a requested continuance in light of the facts that existed at the time the request is made and should not unnecessarily delay a ruling.

B.     Application of Section 11524(b)

Whether the APS hearing officer had the discretion to deny Drivers' continuances pursuant to section 11524(b) and in light of the existing circumstances is a legal question that is reviewed de novo. (*Bussard*, *supra*, 164 Cal.App.4th at p. 858; see also *People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 456–457.)

---

[6]     Drivers' approach also appears consistent with the DMV's practice prior to this litigation. Drivers' counsel represented that under this practice, his office handled 10 to 20 APS hearings a week. However, under the approach urged by DMV, which was attempted to be implemented first by DMV Manager Christopher Pitchford and then Manager Windover, counsel's office handled two APS hearings per year.

Therefore, we independently review whether the APS hearing officer's decision to deny Drivers' continuances was within the scope of his or her discretion under section 11524(b). (*Bussard*, at p. 863; see also *Investco Management & Development LLC*, at pp. 456–457; *Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99 (*Pedro*).) The decision to grant or deny a continuance through section 11524 is reviewed for an abuse of discretion. (*Bussard*, *supra*, at pp. 863, 865; *Ring v. Smith* (1970) 5 Cal.App.3d 197, 201–202.) There is no absolute right to a continuance, or a denial of due process, in the absence of an abuse of discretion. (See *Cooper v. Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 944; *Ring*, at p. 201.) To find an abuse of discretion, the abuse must be so clear that there is a miscarriage of justice. (*Bussard*, at pp. 863.)

This court has recognized that discretion can be abused in a variety of ways. (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316.) A principle significant to this appeal requires an exercise of discretion to be based on correct legal premises and, therefore, the use of an incorrect legal standard necessarily constitutes an abuse of discretion. (See *Grossmont Union High School District v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 584 (*Grossmont*); *Minik v. City of Petaluma* (2016) 3 Cal.App.5th 15, 25 (*Minik*); *Pedro*, *supra*, 229 Cal.App.4th at p. 99.) Also, reliance on impermissible factors to reach a decision can amount to an abuse of discretion. (*Sosa v. CashCall, Inc.* (2020) 49 Cal.App.5th 42, 47 (*Sosa*).)

In this case, the denial of Drivers' continuances was an abuse of discretion due to considerations that were contrary to the proper application of section 11524(b). First, the denials appear to have been assessed with the understanding that any conflict became reasonably foreseeable as soon as a criminal matter and an APS hearing were calendared for the same day. Second, for some requests, the APS hearing officer appeared to assume that if a request for continuance was filed within 10 working days *of the APS hearing*, the request was untimely, even though the plain language of section 11524(b) sets the 10-working-day timeframe from when the likelihood of a conflict became reasonably

40.

foreseeable. Third, for some requests, the APS hearing officers asked if counsel had brought the conflicting APS hearing to the attention of the criminal court and then implicitly faulted counsel for not doing so, even though the APS hearing is a civil matter, (Veh. Code, § 13353.2, subd. (e); *Nick v. Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1416), and Penal Code section 1050, subdivision (a) requires that criminal trials be set "without regard to the pendency" of any civil matter. (Pen. Code, § 1050, subd. (a).) Fourth, for some requests, it appears that a ruling was *unnecessarily* delayed and then denied after the conflict identified by counsel failed to actually materialize, even though the passage of time does not mean that the conflict was not reasonably foreseeable at the time the request was filed. Finally, for some requests, the APS hearing officers faulted counsel for identifying additional conflicts through supplemental requests after an initial continuance was denied, even though section 11524(b) does not require identification of every potential conflict that may exist, and the APS hearing officers did not appear to consider how the resolution of the identified conflict could affect other scheduled criminal matters.

Not every continuance in this consolidated appeal was denied in the same way or on the same purported bases. We also recognize that not all of Drivers' requests were as detailed as they could or should have been. Nevertheless, each of the denials suffers from one or more of the five practices identified above that are contrary to section 11524(b) or Penal Code section 1050, subdivision (a). In other words, the denials were based on standards, factors, and/or legal premises that are contrary to section 11524(b) or Penal Code section 1050, subdivision (a). Thus, the denials constitute an abuse of discretion. (*Grossmont*, *supra*, 98 Cal.App.5th at p. 584; *Sosa*, *supra*, 49 Cal.App.5th at p. 47; *Minik*, *supra*, 3 Cal.App.5th at p. 25; *Pedro*, *supra*, 229 Cal.App.4th at p. 99.)

The final step of our analysis addresses whether the abuses of discretion resulted in a miscarriage of justice—that is, were prejudicial. (See Cal. Const., art. VI, § 13; *Denham v. Superior Court, supra,* 2 Cal.3d at p. 566 [appellant must demonstrate an

41.

abuse of discretion resulted in a miscarriage of justice].)  Here, the denials resulted in the uncontested loss of a protected liberty interest (a driver's license) without the opportunity to present a defense, which implicates due process.  (Cf. *Petrus*, *supra*, 194 Cal.App.4th at p. 1244 [the due process right to present a defense was violated when discovery was received late and a continuance was denied by the APS hearing officer].)  Accordingly, Drivers have demonstrated the requisite miscarriage of justice and reversal is appropriate.  (*Ibid.*; see also *Freeman v. Sullivant, supra,* 192 Cal.App.4th at p. 527 [noting that "an abuse of discretion results in reversible error only when the denial of a continuance results in the denial of a fair hearing, or otherwise prejudices a party"]; *Cooper v. Board of Medical Examiners*, *supra*, 49 Cal.App.3d at p. 944, italics added [noting that "there is no absolute right to a continuance *unless* the refusal thereof would be an abuse of discretion"].)  Consequently, Drivers' writ petitions should be granted, and the DMV directed to hold a new APS hearing for each Driver.

## V.      THE FORMALITY OF A WRIT OF MANDATE MAY BE WAIVED

Having determined Drivers should receive new APS hearings, we next consider whether to require the superior court to issue a writ of mandate directing the DMV to schedule and hold such hearings.  The issuance of a writ is addressed by the text of Code of Civil Procedure section 1095, which states:  "If judgment be given for the applicant [who sought a writ of mandate], … a peremptory mandate must also be awarded without delay."  Ordinarily, the word "must" is perceived as mandatory, which would indicate the prompt award of "a peremptory mandate"—that is, a writ of mandate—is required. However, "rights conferred by statute may be waived unless specific statutory provisions prohibit waiver."  (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049, fn. 4; see Civ. Code, § 3513.)  Because there is no statutory provision forbidding the waiver of the issuance of a writ of mandate, it is possible for the parties to jointly waive the right under Code of Civil Procedure section 1095 to have a writ issued.  We conclude a joint waiver is necessary because the writ protects the interests of each side by specifying what the

agency is commanded to do.  The parties' waiver may be expressed in words, either oral or written, or implied by their conduct.  (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)

California practice guides addressing mandamus state that when a superior court grants a petition for writ of mandamus, the court usually instructs the petitioner's counsel to prepare the peremptory writ of mandamus.  (2 Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2023) § 15.1, p. 15-2 [documents required if writ is granted]; 1 Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2023) §§ 9.41–9.44, p. 9-17 [petitioner's preparation of peremptory writ].)  In comparison, a practice guide addressing a writ proceeding challenging the DMV's suspension of a license states the court usually issues a written ruling and the prevailing party is required to prepare the judgment.  (Johnson & Taylor, California Driving Under the Influence Defense, *supra*, § 4:20.)  The practice guide includes examples of both documents in its appendix.  (*Id*., Appendix §§ 4.16, 4.17)  It does not (1) refer to the preparation and issuance of a writ of mandate, (2) provide an example of a writ, or (3) mention the mandatory language in Code of Civil Procedure section 1095.  These omissions suggest that (1) the DMV and prevailing drivers routinely waive the statutory right to issuance of a writ and (2) cases where the judgment directs the DMV to conduct a new APS hearing rarely result in disputes that could have been avoided by the additional effort of having a formal writ issued.  Accordingly, we will allow the parties in this appeal the flexibility of waiving or requesting the issuance of a writ of mandate and will not direct the superior court to issue such a writ.[7]

---

[7]    In *LandValue 77, LLC v. Board of Trustees of California State University* (2011) 193 Cal.App.4th 675, we concluded the superior court erred by failing to issue a peremptory writ of mandate in a case brought under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.).  In that case, the issuance of the writ was made mandatory by Public Resources Code section 21168.9, subdivision (b) and we rejected the respondent's argument "that the judgment effectively operates as a writ of

43.

We took the same approach in *Ramirez v.* [*Department of Motor Vehicles*] (2023) 88 Cal.App.5th 1313, a case involving only administrative mandamus instead of both ordinary and administrative mandamus. (See Code Civ. Proc., §§ 1085 [ordinary mandamus], 1094.5 [administrative mandamus].) There, we modified the judgment to provide that the matter be "remanded to the DMV for further proceedings not inconsistent with this opinion" (*id*. at pp. 1336–1337) and did not include specific directions for the issuance of a writ. Use of the word "remanded" corresponded to the phrase "remanding the case" contained in Code of Civil Procedure section 1094.5, subdivision (e). "Remanded" lacks specificity and allowed the parties, if they chose, to proceed without the formal issuance of a writ of mandate.

Another question about the content of our judgment is whether to include instructions for how the DMV should conduct the new APS hearings to avoid the due process violations found in *California DUI Lawyers Assn. v. Department of Motor Vehicles,* (2022) 77 Cal.App.5th 517. Instructions of that nature are not needed because the DMV is subject to the permanent injunction issued in that litigation. Since July 20, 2022, the modified permanent injunction has "been final and operative." (*Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 199, fn. 3.) Thus, it restrains the DMV " 'from having its APS hearing officers function as advocates for the position of the DMV in addition to being finders of fact in the same adversarial proceeding' " (*DUI Lawyers, supra,* at p. 538) and from "allowing for ex parte managerial interference with the hearing officers' decisionmaking" (*id*. at p. 535, fn. 6). If the DMV complies with the permanent injunction, those specific types of due process violations will not occur. Alternatively, the DMV might fail to comply with the permanent injunction. We cannot assume such a failure will occur and, therefore, do not reach the questions about

mandate." (*LandValue 77*, at pp. 680–681.) In *LandValue 77*, the petitioner requested a writ. Therefore, that decision did not address the possibility of the parties waiving their right to have a writ issued and should not be interpreted to mean such a waiver is prohibited by law.

what judicial remedies are available to aggrieved drivers. (See Code Civ. Proc., § 525 [injunction "may be enforced as an order of the court"]; *Donovan v. Superior Court* (1952) 39 Cal.2d 848, 850 ["contempt proceedings arose out of alleged violations of a permanent injunction"].)

## VI. THE AWARD OF COSTS TO THE PREVAILING PARTY IN MOOT CASES

### A. Procedural Background

#### 1. *Joseph Klein*

On February 19, 2019, the DMV hearing officer issued a notification of findings and decision stating (1) appellant Joseph Klein's requests to continue the February 15, 2019 APS hearing were denied; (2) neither Klein nor a representative appeared at the APS hearing, and (3) the DMV's evidence demonstrated (a) the peace officer had reasonable cause to believe Klein was driving under the influence, (b) Klein was placed under lawful arrest, and (c) Klein was driving with a BAC of .08 percent or more. The decision stated the suspension of Klein's driving privilege would be reimposed effective February 28, 2019, and would remain in effect through February 27, 2020.

On February 28, 2019, Klein filed a petition for writ of mandate. Klein's petition requested that the DMV be directed to issue Klein's driver's license and, pending the hearing and order on the petition, stay the operation of the order suspending his license. His petition also requested such further relief as the court deemed just and proper and an award of attorney fees and costs under relevant law.

On March 13, 2019, the superior court filed an order staying the suspension of Klein's driving privilege, subject to the condition that he not operate a motor vehicle with any measurable amount of alcohol or other intoxicant in his blood. About 10 weeks later, on May 21, 2019, the DMV issued an order setting aside the suspension of Klein's license. The order stated the DMV had received certified court orders showing Klein had been acquitted in the criminal proceedings and cited the statute requiring the DMV to

immediately reinstate a person's administratively suspended driving privilege if the person is acquitted of criminal charges. (Veh. Code, § 13353.2, subd. (e).)

The superior court's February 2020 ruling on the consolidated cases addressed Klein's petition by stating: "Petition <u>DENIED</u>. The issue raised by the petition is <u>moot</u>. The respondent DMV's order of suspension was vacated and set aside. The parties will bear their own costs. Attorneys' fees are <u>DENIED</u>." The June 2020 judgment implemented these terms.

### 2. *Jamie Perea*

On April 12, 2019, the DMV hearing officer issued a notification of findings and decision stating (1) the request for a continuance of the APS hearing was denied because good cause was not established, (2) neither Perea nor a representative appeared at the APS hearing, and (3) the three criteria for upholding the suspension order had been proven by the DMV's evidence, and (4) the suspension order was reimposed.

On April 18, 2019, appellant Jamie Perea filed a petition for writ of mandate. Perea's petition requested that the DMV be directed to issue Perea's driver's license and, pending the hearing and decision on the petition, to stay the DMV's order suspending his license. The petition also requested such further relief as the court deemed just and proper and an award of attorney fees and costs pursuant to section 800 and all other relevant law.

On May 1, 2019, the superior court filed an order granting a stay of the enforcement of the administrative order suspending Perea's driving privilege. The stay was conditioned upon Perea (1) not operating a motor vehicle with any measurable amount of alcohol or other intoxicant in his blood; (2) submitting to a blood or breath test at the request of any peace officer; (3) driving only to, from and during work; and (4) maintaining a copy of the order in his possession at all times while operating a motor vehicle.

On August 27, 2019, about 17 weeks after the superior court's stay order, the DMV set aside the suspension of Perea's license. The set-aside order stated the DMV had received certified court orders showing Perea had been acquitted in the criminal proceedings and referenced Vehicle Code section 13353.2, subdivision (e).

The superior court's February 2020 ruling on the consolidated cases addressed Perea's petition by stating: "Petition <u>DENIED</u>. The issue raised by the petition is <u>moot</u>. The respondent DMV's order of suspension was vacated and set aside. The parties will bear their own costs [o]f suit." Consistent with the superior court's ruling, the June 2020 judgment stated the parties in the writ proceeding filed by Perea were to bear their own costs.

B.     Issue Raised on Appeal

Klein and Perea contend the superior court erred when it determined that they should bear their own costs. They claim to be the "prevailing party" because they achieved their litigation objectives even though they recovered no monetary relief and their writ petitions were denied as moot.[8]

The DMV contends Klein and Perea did not prevail in their writ proceedings. In particular, the DMV asserts Klein and Perea "incorrectly contend that they achieved their objectives in this litigation and thus are the prevailing parties entitled to costs." The DMV argues that Vehicle Code section 13353.2, subdivision (e) required the APS suspension of their licenses be set aside after the criminal acquittals and, therefore, their writ petitions and the legal theories raised in the superior court had no causal relationship to the DMV setting aside the suspensions.

---

[8]     Klein and Perea do not contend the superior court adopted the wrong type of relief for a moot case when it *denied* their petitions and entered judgment in favor of the DMV instead of *dismissing* their petitions. Their failure to raise this technical issue about a denial or dismissal has no impact on our analysis of their claim to prevailing party status.

C.     Prevailing Party Status

Klein and Perea base their claim to costs on the definition of prevailing party in Code of Civil Procedure section 1032, subdivision (a)(4) and various case law, including *Lewin v. Board of Trustees* (1976) 62 Cal.App.3d 977 (*Lewin*). The cost provisions referred to in *Lewin* were Code of Civil Procedure sections 1094.5, subdivision (a) and 1095. Code of Civil Procedure section 1094.5, subdivision (a), provides in part: "If the expense of preparing all or any part of the record has been borne by the *prevailing party*, the expense shall be taxable as costs." (Italics added.) Code of Civil Procedure section 1095 does not use the term "prevailing party" and addresses the subject of costs by stating: "If judgment be given for the applicant, the applicant may recover the damages which the applicant has sustained, … as may be determined by the court … together with costs."

### 1.     *Code of Civil Procedure section 1032*

The second sentence or prong of Code of Civil Procedure section 1032, subdivision (a)(4) states:

> "If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034."

Under this prong, " 'the trial court in its discretion determines the prevailing party, comparing the relief sought with that obtained, along with the parties' litigation objectives as disclosed by their pleadings, briefs, and other such sources.' " (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1104 (*Friends*).) Thus, the relevant inquiry is "whether the party succeeded at a practical level by realizing its litigation objectives [citation] and the action yielded the primary relief sought in the case." (*Ibid.*)

The first step of our analysis addresses the relief sought by Klein and Perea when they filed their petitions for writ of mandate. The petitions requested a writ directing the

DMV to issue their driver's licenses and, pending the hearing and decision on the petitions, to stay its order suspending their licenses. Thus, they sought interim relief pending a final decision (a stay) and a writ of mandate.

The second step of our analysis identifies the relief actually obtained through the court. Both Klein and Perea obtained interim relief in the form of a stay of the enforcement of the administrative order suspending their driving privileges. No further relief was obtained *in their writ proceedings* because the DMV, as required by Vehicle Code section 13353.2, subdivision (e), issued orders setting aside the suspension of their licenses after receiving court orders showing Klein and Perea had been acquitted in their criminal proceedings.

The third step addresses both parties' litigation objectives, which involves a review of their pleadings, briefs and other sources. The sample answer of the DMV contained in the joint appendix shows the DMV requested a denial of the writ of mandate, entry of judgment in its favor, the dissolution of the superior court's stay, and the reimposition of the license suspension. In short, the DMV objectives were to uphold the license suspensions imposed under the APS system. The objectives of Klein and Perea were the opposite.

At a practical level, Klein and Perea wanted to avoid losing their driving privileges. If Klein had not filed his petition and obtained a stay, his license would have been suspended for over two months before the DMV issued the May 2019 set aside order. Similarly, if Perea had not filed his petition and obtained a stay, his license would have been suspended for about 17 weeks before the DMV issued the August 2019 set aside order. Thus, as a result of pursuing litigation, Klein and Perea realized an objective they would not have obtained without filing suit.

Because the test for prevailing party status under the second prong of Code of Civil Procedure section 1032, subdivision (a)(4) focuses on success at a practical level in relation to the parties' litigation objectives and because other statutes with prevailing

party provisions adopt the same or similar test, we consider cases in which a plaintiff obtained interim relief and, subsequently, the lawsuit was dismissed as moot.

In *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583 (*Champir*), the trial court determined that, for purposes of an award of attorney fees under Civil Code section 5975, subdivision (c), the plaintiff homeowners were the prevailing party in a lawsuit against their homeowners' association. (*Champir*, at p. 586.) The plaintiffs filed the action to enforce their planned development community's recorded covenants, conditions, and restrictions (CC&Rs) governing the installation of a traffic signal. (*Id.* at p. 587.) They obtained a temporary restraining order and subsequent preliminary injunction enjoining the construction of the traffic signal. (*Id*. at p. 588.) After issuance of the preliminary injunction, the homeowners' association obtained the consent of a majority of its members to the installation and related expenditure of funds. (*Id*. at p. 589.) Consequently, the trial court dissolved the preliminary injunction and the plaintiffs voluntarily dismissed the action. (*Ibid*.) Each side then filed motions for attorney fees claiming to be the prevailing party. (*Ibid*.) The trial court awarded fees to the plaintiffs, and the homeowners' association appealed. (*Ibid*.)

The "prevailing party" determination under Civil Code section 5975 focuses on who succeeded on a practical level by achieving their main litigation objectives. (See *Champir*, *supra*, 66 Cal.App.5th at p. 590.) The trial court applied this test and determined the plaintiffs' main objective was to require the homeowners' association to comply with the CC&Rs, which was achieved by obtaining the preliminary injunction that compelled the association to obtain the written consent of a majority of its members before installing the traffic signal. (*Ibid*.) The appellate court upheld this determination and rejected the argument that the association prevailed as a matter of law because it ultimately installed the traffic signal and incurred no monetary liability. (*Id*. at pp. 592–593.)

In *Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249 (*Zuehlsdorf*), the parents of a high school student filed a petition for a writ of mandate and sought injunctive relief against their daughter's high school, school district, and an athletic league to enjoin them from preventing her from playing varsity soccer. (*Id.* at p. 252.) The trial court granted a temporary restraining order and a preliminary injunction, enjoining the defendants from obstructing or interfering with the daughter's participation in the varsity soccer program. (*Id*. at p. 254.) Due to this interim relief, the daughter was reinstated in the athletic program. (*Id*. at p 251.) Subsequently, the trial court denied as moot the application for the permanent injunction and awarded attorney fees and costs under section 800. (*Zuehlsdorf*, *supra*, at p. 254.)

The defendants in *Zuehlsdorf* appealed, contending the award was improper because the plaintiffs were not the prevailing parties. (*Zuehlsdorf*, *supra*, 148 Cal.App.4th at p. 256.) The appellate court referred to the parties' litigation objectives and determined the parents were "successful in [their] attempt to have [the daughter] reinstated in the athletic program while appellants failed in their efforts to prevent her participation." (*Ibid*.) Thus, the appellate court upheld the trial court's determination that the parents were the prevailing party under section 800. (*Zuehlsdorf*, *supra*, at p. 258.)

Courts deciding whether a plaintiff was successful for purposes of obtaining attorney fees under Code of Civil Procedure section 1021.5 must perform a pragmatic assessment. (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685.) "The critical fact is the impact of the action, not the manner of its resolution." (*Ibid*.) Thus, "plaintiffs who obtain some of the benefit sought in their lawsuit may be considered the prevailing party even if the defendant ultimately obtains a dismissal." (1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2023) § 2.108, p. 2-133.) "The same principle applies to plaintiffs whose lawsuits are dismissed as moot because relief is obtained." (*Id*. at p. 2-134.)

Here, we conclude as a matter of law that Klein and Perea were the prevailing party in their lawsuits because they achieved their litigation objectives and retained their licenses.  Thus, Klein and Perea, like the plaintiff in *Friends*, are entitled to further proceedings to determine the amount of the other costs recoverable in accordance with Code of Civil Procedure "section 1032 and the applicable legal principles." (*Friends*, *supra*, 33 Cal.App.5th at pp. 1106, 1111.)

### 2. *Cost Provisions Specific to Mandamus Proceedings*

To the extent Klein and Perea are able to show they pursued a writ of administrative mandamus, they also may be prevailing parties entitled under Code of Civil Procedure section 1094.5, subdivision (a).  The last sentence of that subdivision states:  "If the expense of preparing all or any part of the record has been borne by the prevailing party, the expense shall be taxable as costs." (Code Civ. Proc., § 1094.5, subd. (a).)  "Shall" is ordinarily interpreted as mandatory.  Accordingly, they may be entitled as a matter of right to an award of the expense of preparing the administrative record borne by them.

In addition, Code of Civil Procedure section 1095 refers to the recovery of costs "[i]f judgment be given for the applicant."  This provision applies to both ordinary and administrative mandamus.  (See Code Civ. Proc., §§ 1085, 1094.5.)  Here, judgment was entered against, rather than for, Klein and Perea and, thus, they fall outside the literal terms of the statute.  However, the appellate briefing of Klein and Perea discusses *Lewin* and thus implies they are entitled to costs under Code of Civil Procedure section 1095 and the estoppel theory adopted in *Lewin*.  Accordingly, we consider whether the DMV is estopped from arguing Klein and Perea cannot recover costs under Code of Civil Procedure section 1095 because they did not obtain a judgment in their favor.

In *Lewin*, probationary teachers filed an administrative mandamus proceeding against the board of trustees of a school district that had terminated their employment. (*Lewin*, *supra*, 62 Cal.App.3d at p. 979.)  While the mandamus proceeding was pending,

the parties stipulated that the petition had become moot as to the teachers (except two) who had been reemployed, refused reemployment, or accepted other employment. (*Id*. at p. 981.) Despite the dismissal for mootness, the trial court awarded costs to the teachers. (*Id*. at p. 982.)

The appellate court affirmed the award of costs, stating a number of teachers would have been entitled to relief and would have had judgment but for the school district's rehiring them, which rendered their petition moot. (*Lewin*, *supra*, 62 Cal.App.3d at p. 983.) The court concluded the school district "is thus estopped to complain of the award of costs." (*Ibid*.) To explain its estoppel theory, the court acknowledged the lack of California authority on point and recognized "the general proposition that where the litigant who prevails on the law is denied affirmative relief only because belated conduct of the opposing litigant renders moot the need for judicial relief, the prevailing litigant is entitled to its costs. [Citations.] Respondent cannot escape statutory liability for costs merely by granting the relief prayed for by the petition before the court has the opportunity to rule on the petition." (*Id*. at pp. 983–984.) Consequently, even though the teachers fell outside a literal reading of Code of Civil Procedure section 1095, the appellate court affirmed the award of costs.

The DMV argues that its orders setting aside the suspension of the licenses of Klein and Perea do not involve "belated conduct by the opposing litigant" as that phrase was used in *Lewin*. We note that the existence of estoppel generally is a question of fact. (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.) Because the issue of costs is being remanded to the superior court on other grounds and the estoppel theory might not be reached in those proceedings, we conclude that theory as the basis for an award of cost against the government should be addressed, if necessary, by the superior court in the first instance.

## VII.  OTHER MATTERS[*]

Drivers' notice of appeal listed 51 appellants and case numbers.  The purpose of this part of the opinion is to describe the outcome for Drivers not covered by parts IV. through VI. of the opinion.

### A.  Dismissal of Two Appellants

The appeal of Charles Cowell, case No. BCV-19-101128, from the denial of his petition for writ of mandate was dismissed in June 2021 at his request.

The appeal of Armando Almanza, case No. BCV-19-100879, as conceded by Drivers' opening brief, "is moot as his suspension was set-aside."  This concession was repeated in Drivers' supplemental letter brief submitted after oral argument.  Accordingly, we will apply the usual rule that when a case becomes moot, the appellate " 'court will not proceed to a formal judgment, but will dismiss the appeal.' " (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134; see *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 943 ["the usual disposition of a moot appeal is dismissal"].)  We note that the dismissal of Almanza's appeal is, in effect, an affirmance of the judgment rendered against him.  (See *Paul*, at p. 134; *In re Jasmon O.* (1994) 8 Cal.4th 398, 413.)

### B.  Erroneously Filed Petitions

Drivers' opening brief states that the petition for writ of mandate of Doyoung Kim, case No. BCV-19-101080, was filed in error and concedes the denial of her petition "was correct on that basis."  Drivers' opening brief also states that the petition for writ of mandate of Dustin Blanche, case No. BCV-19-101140, was erroneously filed and "concedes the trial court correctly denied his [petition] as moot" because the DMV set aside the suspension order at the APS hearing.  These concessions were confirmed in Drivers' supplemental letter brief.

---

[*]     See footnote, *ante,* page 1.

Accordingly, we will affirm the parts of the judgment (1) in favor of the DMV and against Kim and (2) in favor of the DMV and against Blanche.

C.      Diaz

The superior court's February 2020 ruling on the consolidated cases addressed Diaz's petition by stating: "Petition DENIED.  The parties will bear their own costs.  The DMV states in [its] brief that the APS hearing did not go forward, and [Diaz] states in his brief that [he] never received a decision.  As it currently stands, the DMV apparently granted a continuance and has not attempted to reschedule the APS hearing.  The issue raised by the petition is moot."  On July 30, 2020, the DMV mailed Diaz an order of suspension stating:

> "The suspension of your driving privilege which became effective May 22, 2018, was stayed by order of the Bakersfield Driver Safety Office Court. [¶]  The stay is now ended by order of the court.  You are hereby notified the suspension of your driving privilege will be re-imposed effective August 04, 2020 and will continue in effect through August 03, 2021."

Diaz has demonstrated that the denial of his petition on the ground his case was moot was incorrect because (1) he was not given an APS hearing and (2) in August 2020, the DMV issued an order of suspension of his driving privilege stating the suspension would be reimposed and continue in effect through August 3, 2021.  Based on this showing and the determinations set forth in part IV. of this opinion, we will reverse the part of the judgment in favor of the DMV and against Diaz.  Diaz's writ petition should be granted on remand with directions that he receive a new APS hearing.

The documents included in Drivers' April 2024 request for judicial notice do not show that Diaz was acquitted in criminal court or that the DMV has vacated the order of suspension.  Based on the record before us, we cannot accept the statement in the DMV's supplemental letter brief that Diaz's writ petition is moot.

D.    Effect of Dispositions in Drivers' Criminal Cases

After oral argument, this court issued an order directing the parties to submit supplemental letter briefs addressing whether the resolution of the criminal matters pending against Drivers rendered the appeal moot as to some or all of Drivers. Drivers argued the appeal was not moot because a dismissal would leave the judgment in place and Drivers would not be relieved of paying the costs awarded to the DMV. Drivers also argued a reversal would allow them to seek costs as the prevailing party and to pursue a motion for attorney fees. The DMV agreed that a vast majority of Drivers' cases were not rendered moot by the completion of the criminal matters. The points about costs and attorney fees, along with other, more detailed analyses presented in the supplemental letter briefs convince us that the appeal is not moot, except as to Almanza. Therefore, only his appeal will be dismissed as moot.

E.    Stay Order

In August 2020, 19 Drivers filed a petition for writ of supersedeas or other appropriate stay order. On August 27, 2020, this court issued an order staying (1) the DMV's orders reimposing the suspension of the driving privileges of O'Neil, Owen, Howard, Gonzalez, Datiz and Lopez Vega and (2) any DMV orders resuspending the driving privileges of 13 other Drivers. For Drivers whose administrative cases are being returned to the DMV for further proceedings, the stay shall remain in place until 10 days after those proceedings are completed. For the other Drivers, the stay shall terminate upon the issuance of remittitur in this case. Because the stay was granted, any remaining requests in the petition for writ of supersedeas are denied.

**DISPOSITION**

The appeal of Armando Almanza, case No. BCV-19-100879, is dismissed as moot. With respect to the other appellant Drivers, the judgment is affirmed in part and reversed in part, as specified below.

The judgment as to Doyoung Kim, case No. BCV-19-101080, is affirmed.

56.

The judgment as to Dustin Blanche, case No. BCV-19-101140, is affirmed.

The judgment as to Joseph Klein, case No. BCV-19-100572, and Jamie Perea, case No. BCV-19-101077, is reversed to the extent it states the parties are to bear their own costs and, on remand, the superior court shall conduct further proceedings on the issue of costs that are not inconsistent with this opinion. The remainder of the judgment as to Klein and Perea is affirmed. Klein and Perea shall recover their costs on appeal.

The judgment as to the remaining 45 appellant Drivers[9] is reversed. On remand, except in cases where the DMV has set aside the suspension order based on the results of

---

[9]     *Cisneros v. Department of Motor Vehicles* (No. BCV-19-100294); *Granados v. Department of Motor Vehicles* (No. BCV-19-100295); *Reese v. Department of Motor Vehicles* (No. BCV-19-100296); *Alejandra v. Department of Motor Vehicles* (No. BCV-19-100297); *Frias v. Department of Motor Vehicles* (No. BCV-19-100298); *Orrin v. Department of Motor Vehicles* (No. BCV-19-100556); *Chavez v. Department of Motor Vehicles* (No. BCV-19-100557); *O'Neil v. Department of Motor Vehicles* (No. BCV-19-100558); *Berry v. Department of Motor Vehicles* (No. BCV-19-100563); *Cosper v. Department of Motor Vehicles* (No. BCV-19-100566); *Jimenez v. Department of Motor Vehicles* (No. BCV-19-100776); *Owen v. Department of Motor Vehicles* (No. BCV-19-100777); *Butler v. Department of Motor Vehicles* (No. BCV-19-100778); *Howard v. Department of Motor Vehicles* (No. BCV-19-100780); *Singh v. Department of Motor Vehicles* (No. BCV-19-100805); *Russell v. Department of Motor Vehicles* (No. BCV-19-100807); *Lynam v. Department of Motor Vehicles* (No. BCV-19-100808); *Blackhurst v. Department of Motor Vehicles* (No. BCV-19-100810); *Aguilar v. Department of Motor Vehicles* (No. BCV-19-100835); *Hawkins v. Department of Motor Vehicles* (No. BCV-19-100836); *Bennett v. Department of Motor Vehicles* (No. BCV-19-100837); *Ogden v. Department of Motor Vehicles* (No. BCV-19-100838); *Segovia-Rivera v. Department of Motor Vehicles* (No. BCV-19-100839); *Campbell v. Department of Motor Vehicles* (No. BCV-19-100840); *R. Gonzalez-Ozuna v. Department of Motor Vehicles* (No. BCV-19-100841); *Davis v. Department of Motor Vehicles* (No. BCV-19-100843); *Becarra v. Department of Motor Vehicles* (No. BCV-19-100878); *Graf v. Department of Motor Vehicles* (No. BCV-19-100880); *J. Perales v. Department of Motor Vehicles* (No. BCV-19-100881); *Del Sesto v. Department of Motor Vehicles* (No. BCV-19-100885); *Montero v. Department of Motor Vehicles* (No. BCV-19-100886); *Sanders v. Department of Motor Vehicles* (No. BCV-19-100887); *Martinez v. Department of Motor Vehicles* (No. BCV-19-100907); *Miller v. Department of Motor Vehicles* (No. BCV-19-100908); *White v. Department of Motor Vehicles* (No. BCV-19-100909); *Hunt v. Department of Motor Vehicles* (No. BCV-19-100910); *Herrera v. Department of Motor Vehicles* (No. BCV-19-100913); *Carter v. Department of Motor Vehicles* (No. BCV-19-101078); *Diaz v. Department of Motor Vehicles* (No. BCV-19-101079); *Romero v. Department of Motor Vehicles* (No. BCV-19-101081); *Datiz v. Department of Motor Vehicles* (No. BCV-19-101126); *M. Rodriguez v. Department of Motor Vehicles* (No. BCV-19-101127); *D. Gonzalez v. Department of Motor Vehicles* (No. BCV-19-101134); *Mody v. Department of Motor Vehicles* (No. BCV-19-101135); *Lopez Vega v. Department of Motor Vehicles* (No. BCV-19-101141).

a criminal case, the superior court shall enter a judgment in favor of Drivers, direct the DMV to set aside the findings and decision rendered in each of their cases, and direct the DMV to reconsider the cases in light of this court's opinion, which reconsideration shall include scheduling and conducting an APS hearing that addresses the merits of each driver's challenge to the DMV's order of suspension or revocation. The August 27, 2020 stay order shall remain in effect as to these Drivers until 10 days after the DMV completes the driver's administrative proceeding.

As to Drivers for whom the DMV has set aside the order suspending their license due to the results of a criminal case, the superior court shall dismiss their writ petitions as moot and address whether those Drivers are prevailing parties for purposes of awarding costs.

The 45 appellant Drivers who obtained a reversal shall recover their costs on appeal.

                                                      FRANSON, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


DE SANTOS, J.